920 P.2d 119

**CITY OF LOVINGTON,**
**Plaintiff–Appellee,**

**v.**

**Kevin TYSON, Defendant–Appellant.**

**No. 17242.**

Court of Appeals of New Mexico.

June 5, 1996.

James E. Snipes, Lovington, for Appellee.

C. Barry Crutchfield, Templeman & Crutchfield, Lovington, for Appellant.

## OPINION

BUSTAMANTE, Judge.

1. Defendant appeals his conviction for aggravated driving under the influence of alcohol (DWI). The facts of this case are undisputed, and we believe the law to be applied to the facts is clear. Therefore, we decide this case on the summary calendar.

2. Defendant was originally charged with aggravated DWI in Lovington Municipal Court. The results of the intoxilyzer tests given to him at the time of his arrest were .17, .17, and .17. In municipal court he was convicted only of DWI, rather than aggravated DWI. Defendant appealed this conviction to the district court. Instead of simply affirming Defendant's DWI conviction, the district court convicted Defendant of aggravated DWI. Defendant then appealed to this Court.

3. On appeal, Defendant raises two issues. First, he maintains that there was insufficient evidence to convict him of any DWI charge at all, let alone aggravated DWI. Second, he argues that the district court could not convict him of aggravated DWI because he had been acquitted of that charge in municipal court. Our first calendar notice proposed to reverse the aggravated DWI conviction on double jeopardy grounds, but to remand for entry of a conviction and sentence for DWI. The State did not respond to the proposed reversal. Defendant has filed a memorandum opposing the proposed remand.

4. Defendant's aggravated DWI conviction must be reversed because, by convicting Defendant only of the lesser included offense of DWI, the municipal court impliedly acquitted him of the greater offense of aggravated DWI. *See State v. Martinez,* 120 N.M. 677, 679, 905 P.2d 715, 717 (1995). Once he was acquitted of the greater charge, he could not be tried again on that charge. *Id.,* 120 N.M. at 678, 905 P.2d at 716. For this reason, we reverse Defendant's aggravated DWI conviction.

■ 5. Defendant's sufficiency of the evidence argument proceeds as follows. Defendant's intoxilyzer results were all .17, or 17 hundredths of one percent. According to Defendant, the applicable statute requires an eight percent reading, or eight hundredths. His results, he points out, were far below this figure. Defendant reaches his eight percent figure by arguing that the statute formerly required an alcohol concentration of one-tenth *of one percent.* NMSA 1978, § 66–8–102 (Cum.Supp.1990). After the statute was amended, it now reads as follows: "It is unlawful for any person who has an alcohol concentration of eight one-hundredths or more in his blood or breath to drive any vehicle within this state." NMSA 1978, § 66–8–102(C) (Repl.Pamp.1994). Defendant points to the legislature's omission of the language "of one percent" following "eight one-hundredths" to argue that the legislature clearly changed the law to increase, eighty-fold, the allowable amount of alcohol a person may have in his or her system before being convicted of DWI. The trial court rejected Defendant's argument.

6. In our calendar notice, we proposed two alternative means of affirming the trial court's decision. We pointed out that the fractions in the amended statute could reasonably be referring not to a percentage of Defendant's blood volume or weight, but to the reading derived from the intoxilyzer or from a blood test. In other words, by using the words "eight hundredths" the legislature meant to outlaw driving with enough alcohol in one's system to produce an intoxilyzer reading of .08 (eight hundredths) or greater. Since the intoxilyzer readings reflect hundredths of one percent, it would be reason-

able for the legislature to also use that terminology, without specifying the "one percent" portion of the equation. This interpretation would avoid the absurd result of interpreting the legislature's action as increasing the allowable level of alcohol in a driver's system by over 1,000 percent. *See State v. Gutierrez,* 115 N.M. 551, 552, 854 P.2d 878, 879 (Ct.App.) (this Court will not interpret a statute or other legislative action in a way that will produce an absurd result), *cert. denied,* 115 N.M. 545, 854 P.2d 872 (1993).

■ 7. In the alternative, our calendar notice proposed to construe the omission of the phrase "of one percent" following "eight hundredths" as an inadvertent omission. We pointed out that in interpreting a statute, this Court may add words to the statute to carry out the evident legislative intent or to express the clearly manifested meaning of that statute. *State v. Dunsmore,* 119 N.M. 431, 433, 891 P.2d 572, 574 (Ct.App.1995); *see also Leo v. Cornucopia Restaurant,* 118 N.M. 354, 362, 881 P.2d 714, 722 (Ct.App.) (changing word "employer" in statute to "worker" to carry out obvious intent of legislature), *cert. denied,* 118 N.M. 430, 882 P.2d 21 (1994).

■ 8. In response to the calendar notice, Defendant argues that the words of the statute are clear, even if the legislature might have erred in using those words. He contends that we are bound to apply the statute as written. We disagree. Our primary goal in interpreting a statute is to give force to the legislature's intent. *State ex rel. Klineline v. Blackhurst,* 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988). The legislature's obvious intent in amending the statute was to lower the allowable level of alcohol in a driver's blood, not to increase it to a level that would kill the driver several times over. The phrase "eight hundredths," without any following reference point, is sufficiently ambiguous to require interpretation, especially given the subject matter here—intoxilyzer readings and blood alcohol levels, which as we have noted are often expressed in terms of hundredths without specifying that the reference is to hundredths of one percent. In addition, as we noted above, even if we were required to add the phrase "of one percent"

to the statute to effectuate the legislature's intentions, we may do so in rare and extreme, but appropriate, circumstances.

9. Given the fact that Defendant's construction of the statute would lead to an absurd result, we construe the statute as referring to the readings obtained from an intoxilyzer machine or a blood test. Any reading or result higher than .08, or eight hundredths, will result in a violation of Section 66–8–102(C).

10. Pursuant to the foregoing, we reverse Defendant's aggravated DWI conviction, but remand for entry of a conviction and sentence for DWI.

11. **IT IS SO ORDERED.**

APODACA, C.J., and BOSSON, J., concur.